Case 4:15-cv-01036 Document 27 Filed in TXSD on 05/05/16 Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
May 05, 2016
David J. Bradley, Clerk

```
IN THE UNITED STATES DISTRICT COURT
 FOR THE SOUTHERN DISTRICT OF TEXAS
            HOUSTON DIVISION

UNITED SPECIALTY INSURANCE        §
COMPANY,                          §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   CIVIL ACTION NO. H-15-1036
                                  §
PORTO CASTELO, INC. AND TRIDENT   §
CIRCLE, INC.,                     §
                                  §
          Defendants.             §
```

OPINION AND ORDER

The above referenced declaratory judgment action cause, brought pursuant to Federal Rule of Civil Procedure 57, and the federal and Texas State Declaratory Judgment Acts, 28 U.S.C. § 2201 and Civil Practice and Remedies Code Chapter 37, is a dispute over coverage afforded by the ocean/marine Hull and Protection and Indemnity provisions of Commercial Lines Policy, USA 4055064 ("the Policy," Exhibit 1 to instrument #19), issued to Defendants Porto Castelo, Inc. ("Porto") and Trident Circle, Inc. ("Trident") by Plaintiff United Specialty Insurance Company ("United"). Pending before the Court is United's traditional motion for summary judgment (instrument #19) under Federal Rule of Civil Procedure 56.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Texas law, the insured bears the burden of proving that his insurance policy covers the benefit he seeks. *Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, *citing Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. (S.D. Tex. 2015).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to

support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting*

*Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13. The Court may not make credibility

determinations.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

### Applicable Law

Generally, federal common law applies to maritime disputes, although there are occasions when state law may supplement or even supersede maritime law.  *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991).  In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 321 (1955), however, the Supreme Court concluded that the regulation of marine insurance belongs to the states.  The Fifth Circuit has construed this rule to mean that a marine insurance policy is a maritime contract within federal admiralty jurisdiction, the interpretation of which, "'in the absence of a specific and controlling federal rule--is determined by reference to appropriate state law.'"  *Albany Ins.*, 927 F.2d at 886 (5th Cir. 1991), *quoting Ingersoll-Rand Financial Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Ci9r. 1985); *AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.*, 920 F. Supp. 1318, 1322 (S.D. Tex. 1996).  "This presumption of state law is, by now, 'axiomatic.'"  *Albany Ins. Co.*, 927 F.2d at 886; *AGIP*, 290 F. Supp. at 1323.  Here Texas law applies.

Interpretation of a contract, including a determination whether the contract is ambiguous, is a legal question for the court.  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003).  Therefore

"[c]ases involving the interpretation of an insurance policy are appropriate for summary disposition." *SnyderGeneral Corp. v. Great Am. Ins.*, 928 F. Supp. 674, 677 (N.D. Tex. 1996)(*citing Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994)), *aff'd*, 133 F.3d 373 (5th Cir. 1998). An insurance policy is a contract to which the rules of contract construction apply. *Balandran v. Safeco Ins. Co. of America*, 972 S.W. 2d 738, 740-41 (Tex. 1998). In construing a contract under Texas law, the court's primary task is to give effect to the written expression of the parties' intent. *Instone Travel*, 334 F.3d at 428. The court should consider all provisions of the contract together to determine the agreement of the parties and to ensure that each provision is given effect and none is rendered meaningless. *Id.*, *citing Int'l Turbine Serv., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002). "Texas law requires us to 'peruse the complete document to understand, harmonize, and effectuate all its provisions.'" *Kona Tech. Corp. v. S. Pac. Trans. Co.*, 225 F.3d 595, 610 (5th Cir. 2000). Terms in an insurance policy are given their ordinary and generally accepted meaning unless the policy indicates that the parties intended a different or technical meaning. *Security Mutual Cas. Co. v. Johnson*, 584 S.W. 2d 703, 704 (Tex. 1979). When the court can give the contract a certain or definite legal meaning, it is not ambiguous and the court may construe it as a matter of law. *American Manufacturers Mutual Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003).

The court must enforce unambiguous language in a contract as it is written, with the standard being the "objective intent" of the parties as demonstrated by the language used. *Barnes v. Forest Hills Inv., Inc.*, 11 F. Supp. 2d 699, 704 (E.D. Tex. 1998), *citing Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). Language is ambiguous when, after applying the rules of contract construction, the court is genuinely uncertain which of two or more possible meanings is the correct one. *Barnes*, 11 F. Supp. 2d 704; *R&P Enterprises v. LaGuarta, Gavrel & Kirk,* Inc., 596 S.W. 2d 517, 519 (Tex. 1980). Lack of clarity in the contract's language is not sufficient to make a contract ambiguous. *Madera Production Co. v. Atlantic Richfield Co.*, No. CA 3-96-CV-2951-R, 1998 WL 292872, at *3 (N.D. Tex. June 1, 1998), *citing Preston Ridge Fin. Serv. Corp. v. Tyler*, 796 S.W. 2d 772, 777 (Tex. App. 1990), writ denied), and *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997). A contract is not ambiguous when its terms are susceptible to only one reasonable construction and it can be given a definite legal meaning. *Id., citing South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1114 (5th Cir. 1984); *Guaranty Nat'l Ins. Co. v. Azrock Industries, Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). A contract is not ambiguous merely because there are conflicting interpretations of the contract language by the parties. *Forbau v. Aetna Life Ins. Co.*, 876 S.W. 2d 132, 134 (Tex. 1994). If the language in an insurance policy is found to have two or more reasonable

interpretations, the court must construe it strictly against the insurer and liberally in favor of the insured. *Barnett v. Aetna Life Ins. Co.*, 723 S.W. 2d 663, 666 (Tex. 1987); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W. 2d 552, 555 (Tex. 1991). Parole evidence is not admissible to create an ambiguity; "extrinsic evidence can [only] be considered when the language of the policy is subject to two or more reasonable interpretations," i.e., when it is ambiguous. *American Casualty Ins. Co. v. Ramirez*, 651 F. Supp. 2d 686, 695 (N.D. Tex. 2009), *citing National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W. 2d 517, 520 (Tex. 1995).

The decision whether a contract is ambiguous and the interpretation of an unambiguous contract are questions of law for the court under Texas law; but if the court determines the contract is ambiguous, the intent of the parties becomes a question of fact for the trier of fact. *Steuber Co. v. Hercules, Inc.*, 646 F.2d 1093, 1098 (5th Cir.), *cert. denied*, 454 U.S. 834 (1980).

The Texas Declaratory Judgment Act, § 37.009 of the Civil Practice & Remedies Code, states, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."

**United's Motion for Summary Judgment (#19)**

The Policy, in effect from August 15, 2014 to August 15, 2015, was issued by United to Porto and Trident and insured Porto, Trident, and a 2001 86' Steel B&B Boatbuilders Shrimp Trawler

Commercial Fisher Vessel named *Miss Eva*, owned by Porto and/or Trident. The declarations page of the Policy[1] states that the *Miss Eva* was insured in the amount of $550,000, with a protection and indemnity limit of $500,000, and a crew sublimit of $100,000.

On or about December 1, 2014, an explosion and fire occurred on board the *Miss Eva* while it was in the Gulf of Mexico in route to Morgan City, Louisiana with four crewmen aboard. As a result of the explosion and fire the *Miss Eva* sank, and an oil pollution incident occurred. The four crewman suffered different degrees of injury and were flown via helicopter to Baton Rouge for hospitalization and/or medical treatment: Captain Joseph Ryan Barcot ("Barcot") purportedly suffered second degree burns over more that 60% of his body, and he has filed a Jones Act lawsuit against Porto and Trident in the 113th Judicial District Court of Harris County, Texas[2]; crew member Ivan Rodriguez ("Rodriguez") allegedly suffered second and third degree burns to his head, upper extremities, left hand, and back; crew member Javier Altamirano ("Altamirano") claims injuries to his back, both elbows, and left knee; and crew member Juan Zamora ("Zamora") endured injuries to his back, both elbows, and his left knee. Zamora made a demand on Porto and Trident for $100,000 for each crew member.

On December 16, 2014, attorneys for Trident and Porto demanded

---

[1] #19, Ex. 1, at p. 13.

[2] Since then the other three have also filed suits. #24, ¶ 2.3, at p. 2.

that United tender to them the full limits of the Hull portion of the Policy, after United concluded that the *Miss Eva* was a constructive total loss.[3] United paid the two boat owners the Agreed Amount of $550,000 and informed them that the Policy excluded coverage for claims, loss, costs or expenses, fines, penalties, or other sums directly or indirectly arising out of the removal of the sunken ship.[4] United contends, and Porto and Trident agree, that no further amount is due under the Hull portion of the Policy so its is entitled to summary judgment on the Hull portion of the Policy.

On December 18, 2014 United sent a reservation of rights letter to Porto and Trident, indicating that there was coverage under the Protection and Indemnity portion of the Policy, specifically under the applicable crew sublimit, for the claims of the four injured crew members, but that the $100,000 sublimit was the total amount of coverage for all claims by these men for injuries arising out of single occurrence.[5] The Policy makes clear

---

[3] The Total Loss section of the Hull Clauses Coverage Form of the Policy states, "There shall be no recovery for a constructive total loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed Value."  #19. Ex. 1 at p. 24.

[4] Endorsement G provides that the Policy "does not cover claims, loss costs or expense, fine, penalty, or other sum directly or indirectly arising out of the removal of wreck of any vessel or its appurtenances or its equipment stored or used on said vessel . . . Ex. 1 at p. 50.

[5] United explains that insurance sublimits are "smaller internal limits."  G. Victor Hallman & Jerry S. Rosenbloom,

that a series of claims may arise from a single occurrence. Ex. 1 at p. 30 ("Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)". In construing "occurrence," the court focuses "on the events that cause the injuries and give rise to the insured's liability rather than the number of injurious effects." *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co.*, 150 F.3d 526, 530 (5th Cir. 1998). Furthermore the crew sublimit is reduced by United's payment of loss, damage,

---

*Personal Financial Planning* 114 (7th ed. 2003). "Many [insurance] policies also limit the coverage for certain types of loss to amounts less than the limits of liability stated on the declarations. These limits are commonly known as sublimits." Leonard E. Murphy, *et al.*, *Property Insurance Litigator's Handbook* 21 (2007). United asserts that it is clear in the Declaration page that sublimits are intended to be a restriction on insurance of a specific type of harm. *Doctors Hospital 1997 LP v. Beazley Ins.*, Civ. A. No. H-08-3340, 2009 WL 3719482, at *10 (S.D. Tex. Nov. 3, 2009)(holding that sublimits are "subject to the policy limits"; *Dillard Univ. v, Lexington Ins. Co.*, Civ. A. No. 06-4238, 2009 WL 1565943, *1 (E.D. La. June 3, 2009)(finding that "[t]he primary and excess policies limit flood coverage to $100,000 through flood sublimits"). United cites cases showing federal courts that have found sublimits are not ambiguous. It further cites *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 938, 955 (5th Cir. 2009) for the rule that within the insurance coverage provided by a policy, the sublimit sets the maximum liability for that particular kind of coverage, a cap on liability that is less than the overall coverage limits, usually on a per occurrence basis. Nowhere in the crew sublimit at issue here does the language "claim" or "per claim" appear.

costs, fees and expenses associated with the crew members' claims. "It is the general law and practice in Protection and Indemnity insurance for legal expenses incurred in defending a liability covered by the policy to be treated as part of the overall claim. That claim [inclusive of legal expenses] is limited by the amount insured in the . . . policy." *Taylor v. Lloyd's Underwriters of London*, Civ. A. No. 90-1403, 1994 WL 118303, *13 (E.D. La. Mar. 25, 1994), *aff'd in part*, 47 F.3d 427 (5th Cir. 1995).

Porto and Trident disagree and argue that United has a duty to pay the injured crew members the full value of their claims up to the $500,000 limit of the Protection and Indemnity portion of the Policy.

United claims, and Porto and Trident agree, that it has no duty to cover, defend or indemnify Porto and Trident as to any claims they may assert against each other. *See* #19, Ex. 1, at p. 34, "Cross Liability Exclusion" Endorsement ("Protection and Indemnity form: This Policy shall not cover claims for an Assured against another Assured, nor shall it apply to claims against the property of another Assured."). Nor, all the parties agree, is United responsible for any oil pollution or water pollution under the "Total Pollution Exclusion," which states that "this Policy does not insure against any loss, damage, cost, liability, expense, fine or penalty, or any kind or nature whatsoever, imposed on the Assured, directly or indirectly, in consequence of, or with respect to, actual or potential discharge, emission, spillage or leakage

upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever." #19, Ex. 1, at p. 41. Moreover the "Absolute Exclusion Punitive and Exemplary Damages" Endorsement unambiguously states that there is no coverage for fines, penalties or exemplary damages assessed against Porto and Trident. *Id.* at p. 37.

The parties also agree that all the claims in this suit have arisen from a single occurrence.

### Defendants' Objections and Response (#24)

Porto and Trident object that United has failed meet its obligations so under the Protection and Indemnity portion of the Policy. They contend that the $100,000 crew sublimit should provide up to $100,000 of coverage per crew member per occurrence.

Porto and Trident argue that the Policy does not explain how the $100,000 crew sublimit reconciles with the applicability of the $500,000 Protection & Indemnity limit in the Policy. They point to the deposition testimony of James K. Bass ("Bass"), United's designated representative, in which he was unable to give a clear answer to how the two could be reconciled. #124, Ex. B, 64:20-65:25. First they look to the original PLTF000199 (#124, Ex. C, p. 30) of the Policy's explanation of coverage:

> In consideration of the premium and subject to the warranties, terms and conditions herein. . . this Company hereby undertakes to pay up the amount hereby insured . . . such sums as the Assured, as owner of the vessels described on the Declaration Page shall have become legally liable to pay and shall have paid on account of: . . . .

>   (a) Loss of life of, or injury to, or illness of, any person;
>   (b) Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, injury to, or illness of **any member of the crew** of the vessel named herein . . . . [emphasis added by Porto and Trident]

PLTF00199 was amended by PLTF000216 (*id.* at p. 47) as follows:

>   *(a) Loss of life of, or injury to, or illness of, any person; excluding crew and/or employees,*
>
>   *Joseph Ryan Barcot*
>   *Juan Julos*
>   *Javier Martinez*
>   *Ivan Rodriguez*

Porto and Trident argue that in light of the high premiums they paid, i.e., $2500 for each crew member for crew coverage and $12,000 for the $500,000 Protection and Indemnity coverage, they believed they were buying crew coverage of up to $100,000 per crew member per occurrence. During his deposition Bass explained that no matter what number of crew members Porto and Trident had, they would have to pay a $2,500 premium for each one, but would only be entitled to recover the same $100,000 based on the reasoning that the more crew members the boat had, the more occurrences it would have. Porto and Trident argue that the opposite is true: the more crew members, the safer the boat. Bass conceded that the "per occurrence" language was standard in such policies and did not depend on the number of crew members or any other factor. Ex. B, 127:19-128:21.

   Alternatively Porto and Trident suggest that given the policy language under (a), which affords coverage specifically for claims

-14-

of Barcot, Julos, Martinez, and Rodriguez, and because (b) permits Porto and Trident to trigger both the crew sublimit and the general Protection and Indemnity portions of the Policy, under (a) the crew members' claims fall under the category of "any person," "employees," and "crew," and under (b) they fall under the category of crew. Therefore coverage associated with their hospital, medical, or other expenses necessarily and reasonably incurred in respect to loss of life of, injury to, or illness of any one of these crew members would be limited by the crew sublimit, but any other damages could fall under the general Protection and Indemnity portions of the Policy pursuant to (a). Ex. C, PLTF000199.

Moreover, the two contend, because "crew" is not defined in the policy, Barcot, Julos, Martinez and Rodriguez are not identified as crew in the policy, so their damages are not limited in any way by the crew sublimit. Indeed, under (a) three of them are called "persons" and not "crew." Under this interpretation of the crew sublimit, the four would be entitled to recover the full $500,000 limit of the Protection and Indemnity portion of the Policy to cover and defend their claims against Porto and Trident for their injuries in the December 1, 2014 fire.

Porto and Trident claim that United's interpretation of "crew sublimit" is not the "certain or definite legal meaning" of the term, and therefore the Court should determine if United's proposed construction is the only logical determination. Since Porto and Trident claim thy have suggested more than one reasonable

interpretation, there is an ambiguity which should be construed against the drafter, United.

### United's Reply (#25)

In light of Porto and Trident's agreement that United paid in full the $550,000 hull coverage due under the Policy, that the Policy provides no coverage for pollution, removal of the wreck, cross-claims between the insureds, and punitive damages, and that the four crew members' injuries arose from the same occurrence, the only issue here relates to the crew sublimit. United maintains that the $100,000 crew sublimit is unambiguous on its face and that it is subject to only one reasonable interpretation, i.e., that it applies to damages to the crew as a whole. Defendants cannot rely on unsupported allegations or deposition testimony to create an ambiguity where one does not exist, nor to contradict the plain language of the unambiguous Policy, nor by modifying the plain term "crew sublimit" to "crew*member* sublimit [emphasis by United]."

"Crew sublimit" has one clear and definite legal meaning. The Merriam Webster dictionary defines "crew" as "a *group* of people associated in a common activity," and as "the *whole company* belonging to a ship sometimes including the officers and master," clearly in the plural. Merriam Webster Online Dictionary, 2016, http://http://www.merriam-webster.com/dictionary/crew (Mar. 3, 2016). "Crew" does not refer to a single person; "crewmember" would be appropriate if it did. If the Court were to adopt Porto and Trident's interpretation, it would be contrary to the purpose

-16-

of a sublimit.  If they would be entitled to up to $500,000 for crew claims, there would be no purpose in including the sublimit in the Policy;  therefore the crew sublimit would be rendered meaningless in violation of Texas law on contract interpretation. *El Paso Field Services, LP v. MasTec North America, Inc.*, 389 S.W. 3d 802, 805 (Tex. 2012)("In discerning the parties' intent, 'we must give effect to all the provisions of the contract so that none will be rendered meaningless,"), *quoting J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 229 (Tex. 2003).  Moreover a contract provision is not ambiguous simply because the two parties interpret it differently.  *Forbau*, 876 S.W. at 134 (A contract is not ambiguous merely because there are conflicting interpretations of the contract language by the parties).  Because the provision is not ambiguous, Porto and Trident cannot use parole evidence, such as the testimony of Bass, to create an ambiguity where none exists.

### Court's Decision

The Court fully agrees with United that the language of the policy, including the crew sublimit, is clear and unambiguous on its face and should be enforced.  Accordingly, the Court

ORDERS that United's motion for summary judgment is GRANTED.

United has sought a recovery of fees and costs, but does not identify the statute under which he seeks them   The Court

ORDERS United to file within 20 days an appropriate motion applying the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 171-19 (5th Cir. 1974), with accompanying billing

-17-

records. *See Campbell v. Hardradio*, No. 3:01-CV-2663-BF, 2003 U.S. Dist. LEXIS 23584, *5 (N.D. Tex. Dec. 31, 2003)(determination of reasonable attorneys' fees under Texas law is "virtually identical to the *Johnson* factors used by the Fifth Circuit."), *citing Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W. 2d 812, 818 (Tex. 1997); *Vela v. City of Houston*, 276 F.3d 659, 679-81 (5th Cir. 2001). Porto and Trident shall file a timely response. After the Court resolves the matter of an award of fees and costs, it will issue a final judgment by separate instrument.

**SIGNED** at Houston, Texas, this  5th  day of  May , 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE